FILED

FEB 2 - 2006

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re<br><br>LYNWOOD D. HALL and BRENDA A. HALL, husband and wife,<br><br>Debtors. | ) | Chapter 12<br><br>No. 4-05-04423-EWH |
| O. RAY OSBORN and CAROLYN OSBORN, husband and wife, both in their individual capacity and as Trustees of the Osborn Family Trust,<br><br>Plaintiffs,<br><br>v.<br><br>LYNWOOD D. HALL and BRENDA A. HALL, husband and wife; THE PICNIC BARREL LIQUOR MART, INC., an Arizona corporation; D. JOE BARNES and PATRICIA G. BARNES, husband and wife; and FIRST AMERICAN TITLE AGENCY OF PINAL COUNTY, an Arizona corporation, a/k/a First American Title Insurance Company, a/k/a First American Title and Trust,<br><br>Defendants. | ) | Adv. No. 05-00195<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

A broker provided services to the Debtors and the buyers of their farm both pre and postpetition. Because the contract which established the broker's right to a commission was

entered into prepetition, the broker's claim is a prepetition claim which cannot be paid postpetition or given administrative priority status. The reasons for this conclusion are set forth in the balance of this Memorandum Decision.

## FACTUAL AND PROCEDURAL HISTORY

Debtors own a 320-acre farm ("Farm") in Cochise County, Arizona. The Farm was encumbered by a number of liens, including the lien in favor of O. Ray and Carolyn Osborn ("Osborns"). In the spring of 2005, tensions developed between the Debtors and the Osborns[1] and the Osborns began to take enforcement actions to collect their debt. In response to the Osborns' collection efforts, the Debtors decided to sell the Farm.

On April 11, 2005, the Debtors executed an Offer and Acceptance Agreement ("Agreement") prepared by Kirk McCarville of Palo Verde Land & Investments (collectively "Broker") to sell the Farm to their friends of 30 years, Donald Joe and Patricia G. Barnes ("Barnes" or "Buyers") for $960,000. The Agreement provides that, at the close of escrow the Broker is to be paid 5% of the sale price from the Debtors' proceeds of sale ("Commission").

The Agreement was executed by the Debtors and the Barnes. It was not signed by the Broker. There was no separate listing agreement between the Broker and the Debtors.

[1] The Osborns are Brenda Hall's parents.

The Buyers are long-standing clients of the Broker, who specializes in non-residential land sales, including 1031 exchange sales.[2] The Debtors had never met the Broker before the date they executed the Agreement.

After the Agreement was executed, the Broker assisted the Buyers, during the Agreement's due diligence period, in determining if the purchase price was fair by undertaking an analysis of the value of the Farm. He assisted the Debtors by working with the title company to identify and resolve lien issues. However, before the sale could close, the Osborns filed suit in Cochise County state court to foreclose their lien.

By the time the Osborns filed that foreclosure suit, a major dispute had arisen regarding the amount of the Osborns' lien claim. On August 10, 2005, shortly after the Osborns filed suit, the Debtors filed for Chapter 12 relief.[3] On August 31, 2005, the Debtors filed a motion to sell the Farm to the Buyers. The Osborns filed an objection to the sale. The Broker came to court to testify in support of the sale. His testimony was not, however, needed because the parties agreed to let the sale proceed with $400,000 of the sale proceeds being immediately distributed to the Osborns, and an additional $400,000 being held in an interest-bearing account subject to the determination of the amount of the Osborns' claim.

---

[2] Section 1.1031 of the Internal Revenue Code sets out the procedures for "like kind" exchanges of real property. Exchanges which fall within the provisions of a "1031 exchange" are exempt from capital gains tax.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330 and to the Federal Rules of Bankruptcy Procedures, Rules 1001-9036

On September 22, 2005, an order ("Sale Order") was entered approving the sale pursuant to the terms of the Agreement, as modified, to permit the payment to the Osborns and pay off of another lien holder. Another modification was that the payment of the Commission was not to be made from escrow. After the Sale Order was entered, the Broker, at his own expense, flew to Oklahoma to obtain the Barnes' signatures on all of the sale documents to assure that the sale closed during the six-month reinvestment period required for 1031 exchanges.

On October 3, 2005, an application was filed to approve payment of the Commission. The Osborns objected. A hearing on the objection was held and testimony taken on November 28, 2005. All post-hearing briefs have been filed. The matter is now ready for decision.

## JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. § 1334 and § 157(b)(2)(A) and (B).

## ISSUES

1. Is the Broker entitled to be immediately paid the Commission as a third-party beneficiary of the Agreement?
2. Is the Broker entitled to an administrative claim for the Commission?

# DISCUSSION

Under Arizona law, a real estate commission is earned when a ready, willing and able buyer is produced by the broker. Gyler v. Daly, 70 Ariz. 135, 217 P.2d 583 (Ariz. 1950). That rule has been enforced by the Ninth Circuit. In re Munple, Ltd., 868 F.2d 1129, 1130-31 (9th Cir. 1989).

In this case, the Broker and the Debtors argue that the Commission was not based on procuring a buyer, but on providing services to assist both the Buyers and the Debtors in the consummation of the Agreement. Under their analysis, the Commission was not earned until after the Broker had provided services and escrow closed. Because escrow did not close until after the petition was filed and because the Broker provided services to the Debtors and the Buyers after the Agreement was executed, they argue that the Broker is entitled to the Commission either as a third-party beneficiary of the Agreement or as an administrative claim.

However, even if the Broker was a third-party beneficiary to the Agreement, the Agreement was a prepetition contract. The Debtors did not assume the Agreement by selling the Farm. Assumption of an executory contract is possible, only after notice and a hearing, pursuant to the provisions of § 365 and only after the assumption is approved by court order. See In re Snowcrest Dev. Group, 200 B.R. 473, 477 (Bankr. D. Mass. 1996). In this case, no § 365 hearing was held and no court order has been entered approving assumption of the Agreement. There was only an order approving the sale of the Farm under the terms of the Agreement "as modified" to exclude payment of the Commission from escrow. Even if the Broker is a third-party beneficiary of the Agreement, because the Agreement was not assumed

by the Debtors, any claims that exist under the Agreement are prepetition claims. Id. To the extent that the Agreement could be characterized as a non-executory option contract, the Broker's claim to the Commission, as a third-party beneficiary of a non-executory contract, is still a prepetition claim. See In re Stewart Foods, Inc., 64 F.3d 141, 144-145 (4th Cir. 1995) (holding that claims based on non-executory contracts are prepetition unsecured claims).

Furthermore, the Broker has not demonstrated that the Agreement required him to do anything to receive the Commission. The Broker did render services to both the Buyers and the Debtors after the Agreement was executed, including services rendered postpetition, but no evidence was presented that indicated that the failure to provide such services would vitiate the Broker's rights to the Commission. The fact that services were rendered postpetition does not elevate the Broker's prepetition claim to an administrative expense priority unless the Broker could be employed as a professional by the Debtors. In re HSD Venture, 178 B.R. 831, 835 (Bankr. S.D. Calif. 1995). Because the Broker's rights to the Commission were established by the prepetition Agreement which was either (1) non-executory or (2) not assumed by the Debtors, the Broker holds only a prepetition claim against the Debtors' estate. As a result, the Broker does not qualify as a disinterested person under § 327 and is, therefore, not eligible to be retained as a professional by the Debtors. Id. at 834. A professional who is ineligible to be paid under § 503(b)(2) cannot receive an administrative claim under § 503(b)(1). In re Weibel, Inc., 176 B.R. 209, 213 (9th Cir. B.A.P. 1994).

Finally, at the hearing the court, sua sponte, raised the question of whether the Broker had a potential quantum meruit claim for the postpetition services he provided by flying to Oklahoma to obtain the Buyers' signatures on all documents necessary to consummate the sale of the Farm. However, unjust enrichment or quantum meruit claims are not administratively viable under the holdings of Weibel and HSD Venture.

## CONCLUSION

The Broker is not entitled to an immediate payment of the Commission as a third-party beneficiary to the Agreement because it was not assumed by the Debtors. The Broker, as a prepetition creditor, is unqualified to be a professional for the Debtors' bankruptcy estate and, therefore, is not entitled to an administrative expense claim. The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 7052. Counsel for the Osborns is directed to submit an order consistent with the terms of this Memorandum Decision.

Dated this 2nd day of February, 2006.

Eileen W. Hollowell
U.S. Bankruptcy Judge

Copy of the foregoing served as indicated this 2nd day of February, 2006, to:

Clifford B. Altfeld, Esq.
Leonard Felker Altfeld et al
250 North Meyer Avenue
Tucson, AZ 85701-1090
Attorneys for Debtors
cbaltfeld@lfagb.com

Sally M. Darcy, Esq.
McEvoy, Daniels & Darcy P.C.
Camp Lowell Corporate Center
4560 East Camp Lowell Drive
Tucson, AZ 85712
Attorneys for Palo Verde Land & Investments
darcysm@aol.com

Jonathan M. Saffer, Esq.
Snell & Wilmer, LLP
One South Church Ave. #1500
Tucson, AZ 85701-1630
Attorneys for Osborns
jmsaffer@swlaw.com

Alan R. Costello, eSQ.
Costello Law Firm
1440 East Missouri Ave., Suite C-170
Phoenix, AZ 85014
Attorneys for Trustee
acostello@costello-law.com

Charles A. Irwin, Esq.
Cochise County Attorney's Office
P.O. Drawer CA
Bisbee, AZ 85603
bmanfrediz@co.cochise.az.us

Mark L. Collins, Esq.
Collins & Butler
1670 East River Road, suite 124
Tucson, AZ 85718
Attorneys for First American Title
mcollins@collinsbutler.com

By__________________________
Judicial Assistant