FILED

OCT 2 - 2007

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re | ) Chapter 12 |
| LYNWOOD D. HALL and BRENDA HALL, | ) Case No. 4-05-bk-04423-EWH ) |
| Debtors. | ) MEMORANDUM DECISION ) |

## I. INTRODUCTION

The Debtors, relying on a provision added to Chapter 12 by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23, seek to have the capital gains tax generated by the postpetition sale of their farm treated as a liability of their Chapter 12 Estate ("Estate"). However, the new provision, 11 U.S.C. § 1222(a)(2)(a),[1] only applies to prepetition taxes that are entitled to priority status under § 507. Because the capital gains tax in question was generated by a postpetition sale, it may not be paid through the Chapter 12 plan or included in the Debtors' Chapter 12 discharge. The reasons for this conclusion are explained in the balance of this decision.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as revised by BAPCPA.

## II. FACTS AND PROCEDURAL HISTORY

The facts are not in dispute. The Debtors filed for Chapter 12 relief on August 9, 2005.[2] The Court granted Debtors' motion to sell their 320-acre farm for the sum of $960,000 on September 22, 2005. The sale of the farm land generated a capital gains tax of about $29,000. The Internal Revenue Service ("IRS") filed Proofs of Claim for prepetition debt, but it did not file a Proof of Claim against the Estate for the postpetition capital gains tax. The Debtors' First Amended Plan, however, proposes to include that tax liability as an unsecured claim in Class 6,[3] which will be paid in full to the extent that funds are available, and otherwise will be paid pro rata with the other Class 6 claims and the balance discharged.

The IRS filed a timely objection. The IRS asserts that because the Estate is not a separate taxable entity in a Chapter 12 bankruptcy, the tax liability resulting from the postpetition sale was not incurred by the Estate, but is the responsibility of the Debtors. The Debtors argue that postpetition taxes generated by the sale of farming assets are treated as unsecured debt of the Estate and dischargeable under 11 U.S.C. § 1222(a)(2), as amended by BAPCPA. In support, Debtors cite In re Knudsen, 356 B.R. 480 (Bankr. N.D. Iowa 2006), the only published opinion on the application of amended § 1222(a)(2) to postpetition taxes.

---

[2] Unlike the general effective date of BAPCPA, the amendment to § 1222(a)(2) became effective on the date of enactment, April 20, 2005. Pub. L. 109-8, 119 Stat. 23 § 1003(c). Consequently, the newly added § 1222(a)(2)(A) applies to this case.

[3] Class 6 encompasses the priority claims of the IRS and Arizona Department of Revenue.

2

## III. ISSUE

Is the capital gains tax arising from the postpetition sale of farm land a priority claim under § 507, which can be denied full payment in a Chapter 12 plan and treated as an unsecured claim not entitled to priority pursuant to § 1222(a)(2)(A)?

## IV. JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1334 and § 157(a) and (b)(2)(B), (J) and (L).

## V. DISCUSSION

A. Statutory Framework

Chapter 12 was created as a remedy for a "family farmer with regular annual income." See § 101(19). It is modeled after Chapter 13 and allows eligible farmer debtors to adjust their debts in a similar manner. 8 Collier on Bankruptcy ¶ 1200.01[2], p. 1200-4 (15th ed. rev. 2006). The Chapter 12 debtor remains in possession and control of all the property and continues to operate the farm. § 1203. Upon confirmation of the Chapter 12 debt adjustment plan, all property of the estate vests in the debtor unless the plan provides otherwise. § 1227(b). Section 1222(a) prescribes the mandatory contents of a Chapter 12 plan. Under § 1222(a)(2)(A) -- the provision at issue -- a Chapter 12 plan shall:

> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507, unless --
> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, but the debt shall be treated in such manner only if the debtor receives a discharge; . . .

3

Under the plain language of § 1222(a)(2), in order to qualify for treatment as an unsecured claim, the claim must fall within one of the priority categories in § 507. Only claims entitled to priority under § 507 <u>and</u> falling within the terms of § 1222(a)(2)(A) may "be treated as an unsecured claim that is not entitled to priority under section 507." There are two potential categories under which taxes may fall within § 507: administrative expenses (§ 507(a)(2))[4] or allowed unsecured claims of governmental units (§ 507(a)(8)). Because § 507(a)(8) claims arise from taxes owed for prepetition years, 4 Collier on Bankruptcy ¶ 507.10[1], p. 507-61 (15th ed. rev. 2006), the postpetition taxes in question here do not fall under that section. Consequently, the question is whether the taxes arising from the postpetition sale of the farm qualify as administrative expenses under § 507(a)(2).

The pertinent portion of § 507(a)(2) identifies as a priority "administrative expenses allowed under section 503(b)." In turn, § 503(b) provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, . . . including --
> (1)(B) any tax –
> (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; . . . .[5]

---

[4] This section was § 507(a)(1) before the general effective date of BAPCPA, when it was re-numbered to § 507(a)(2) and administrative expenses were given second priority. Because the priority position of administrative expenses are not at issue, this section will be referred to as it was re-numbered under BAPCPA.

[5] The language quoted is the pre-BAPCPA version. Section 503(b)(1)(B)(i) was amended by BAPCPA to clarify that it applies to both secured and unsecured tax claims, In re Brown & Cole Stores, 2007 WL 2701283, at *3 (9th Cir. BAP August 17, 2007), and now reads: "incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title." This change was not effective until

4

In order for a tax to qualify as an administrative expense under § 503(b)(1)(B)(i), the tax must: (1) be "incurred by the estate"; and (2) not be specified in § 507(a)(8). Towers v. United States (In re Pacific-Trading Co.), 64 F.3d 1292, 1298 (9th Cir. 1995) (referring to § 507(a)(7)[6]); Missouri Dept. Of Revenue v. L.J. O'Neill Shoe Co. (In re O'Neill), 64 F.3d 1146, 1149 (8th Cir. 1995) (§ 507(a)(7), now § 507(a)(8)) (citations omitted). "If either of these two requirements is not satisfied, then the claim is not entitled to administrative expense treatment." In re O'Neill, 64 F.3d at 1149. As discussed above, the second prong is met because postpetition taxes do not fall within § 507(a)(8),[7] which applies to taxes owed for prepetition years.

B. Are Taxes Arising from the Postpetition Sale of Farm Assets Incurred by the Chapter 12 Estate?

The question, then, is whether the capital gains tax arising from the postpetition sale of the farm land is a tax "incurred" by the Estate. The IRS argues that the taxes cannot be incurred by the Estate because -- unlike cases filed under Chapter 7 or 11 -- a Chapter 12 estate is not a separate taxable entity. The Internal Revenue Code

---

October 17, 2005, and the amendment does not apply to this case. In any event, the additional language would not affect the outcome here.

[6] The Bankruptcy Reform Act of 1994 re-numbered § 507(a)(7) to § 507(a)(8).

[7] At a status hearing in this case, the Trustee argued that the taxes arising from the sale of the farm are entitled to priority under § 507(a)(8)(C), as taxes "required to be collected or withheld and for which the debtor is liable in whatever capacity." Section 507(a)(8)(C) extends priority to so-called "trust fund" taxes, which "must be owed by a party other than the debtor and then collected or withheld by the debtor from the other party." 4 Collier on Bankruptcy ¶ 507.10[4], p. 507-73 (15th ed. rev. 2006). Because the taxes at issue here are owed by the Debtors in the first instance, they do not fall within the scope of § 507(a)(8)(C). Id.

5

creates a separate taxable entity upon the filing of petitions by individuals under Chapters 7 and 11, but does not create a separate taxable entity in cases filed by individuals under Chapters 12 and 13. 26 U.S.C. §§ 1398, 1399. Chapter 12 debtors must file their own tax returns and pay any postpetition taxes, which are incurred by the debtors themselves. Because a Chapter 12 estate does not constitute a separate taxable entity, it cannot incur a tax liability constituting an administrative expense.

The IRS also points out that there is no provision for filing a claim for postpetition taxes in Chapter 12. A Chapter 13 tax creditor may file a claim for postpetition taxes under § 1305,[8] but there is no corresponding provision in Chapter 12. The IRS argues that because it cannot file a claim for postpetition taxes against the Estate, the postpetition taxes cannot be claimed as an administrative expense of the Estate.

The Debtors counter that the court in Knudsen recognized that a Chapter 12 estate is not a separate taxable entity, but concluded that taxes incurred postpetition by the individual debtors can still be treated as administrative expenses under § 503(b)(1)(B) for purposes of payment under the plan. The Knudsen court specifically relied on O'Neill, 64 F.3d at 1152, in reaching this conclusion. 356 B.R. at 490.

However, the Knudsen court's reliance on O'Neill, a corporate Chapter 11 case, is misplaced. The primary issue before the Eighth Circuit in O'Neill was whether state taxes for prepetition corporate income qualified as administrative expenses. 64 F.3d at 1148. The Eighth Circuit did not decide whether the prepetition tax was "incurred by the

---

[8] Section 1305(a) provides that a creditor holding a claim "for taxes that become payable" while the case is pending may file a proof of claim. It should be noted that § 1305 speaks of "a claim against the debtor" -- not the estate.

6

estate" because the tax failed the second prong of the administrative expense test -- it was "a tax of a kind specified in § 507(a)(7)" (now § 507(a)(8)). 64 F.3d at 1149. Further, there was no dispute that the taxes on postpetition corporate income were administrative expenses. 64 F.3d at 1148. The state's argument pertaining to postpetition taxes was that when income taxes straddle the petition date, the tax claim cannot be split into prepetition and postpetition portions because that splits the tax year between the prepetition corporation and the postpetition estate, but the estate is not a separate taxable entity under 26 U.S.C. § 1399. Id. at 1151-52. The Eighth Circuit dismissed that argument, explaining that the corporate debtor was not being taxed as two separate entities. Rather, it was being taxed as one continuous corporate entity, but the payment of the tax was being divided into separate components under bankruptcy law to determine the priority of payment. Id. at 1152. Thus, Knudsen is not persuasive because of its reliance on a corporate Chapter 11 case, which is inapposite to answering the precise question at issue here -- whether a Chapter 12 estate can incur a federal capital gains tax liability that arises postpetition.

Instead, this Court agrees with the approach of the bankruptcy court in In re Brown, 2006 WL 3370867 (Bankr. D. Mass. Nov. 20, 2006), which found that a Chapter 13 estate cannot be held liable for capital gains tax because it does not exist as a taxable entity.[9] The Chapter 13 debtor argued that capital gains tax arising from

---

[9] Because Chapter 12 was modeled after Chapter 13 and many of the provisions are identical, it is appropriate for a court to look to Chapter 13 cases when ruling in a Chapter 12 case. 8 Collier on Bankruptcy ¶ 1200.01[5], p. 1200-12 (15th ed. rev. 2006); see also Cohen v. Lopez (In re Lopez), 372 B.R. 40, 45 n.13 (9th Cir. BAP 2007). Here, individuals filing under Chapter 12 and 13 are similarly situated in that the debtor's bankruptcy estate is not a separate taxable entity.

7

the postpetition sale of his interest in rental property should be treated as an administrative claim for which the estate was liable. Since the debtor's interest in the property was property of the estate when it was sold, he contended the estate incurred the tax. Id. at *1. The debtor sought to have the taxes paid through the plan or have the Chapter 13 Trustee release funds to the debtor to pay the taxes. The Chapter 13 Trustee agreed that the taxes should be included in the plan. A creditor objected, arguing, inter alia, that § 1305 does not require a taxing authority to file a proof of claim; instead, a tax creditor may pursue its claim against the debtor after the case is closed.

In addressing whether the estate was liable for the tax, the Brown court first noted that § 503(b)(1)(B) "does not answer the question of what it means for a tax to be 'incurred by the estate.'" Id. at *2. The court opined, however, that § 1305 -- not § 503(b) -- controls postpetition tax claims in Chapter 13. Id. at *2. Section 1305 provides that a creditor may file a proof of claim. The choice to file a claim belongs to the creditor, and the debtor may not file one on its behalf. Id. The court then turned to the Internal Revenue Code, noting that it does not treat the Chapter 13 estate as a taxable entity. "It is the Debtor, not his estate, who is burdened by and benefits from gains and losses." Id. at *3 (citation omitted). The court concluded the Chapter 13 estate could not incur the capital gains tax when it did not exist as a taxable entity. Id.

This Court agrees with the Brown court that § 503(b)(1)(B)(i) must be read in conjunction with 26 U.S.C. §§ 1398 and 1399 of the Internal Revenue Code. The starting point for interpreting a statutory provision is the language of the statute itself. Lamie v. United States Trustee, 540 U.S. 526, 534 (2004). However, the statutory language must also be viewed in context: "The plainness or ambiguity of statutory

8

language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997) (citations omitted). In this case, the context includes the interplay between the Bankruptcy Code, as amended by BAPCPA, and the Internal Revenue Code of 1986. The Internal Revenue Code treats a Chapter 12 estate (and Chapter 13 estate) differently from an estate arising under Chapter 7 or 11. There is no separate taxable entity created when an individual commences a case under Chapter 12 or 13. 26 U.S.C. §§ 1398, 1399. Consequently, the capital gains tax arising from the postpetition sale of the farm land cannot be a tax "incurred" by the Chapter 12 Estate under § 503(b)(1)(B)(i) because it does not exist as a separate taxable entity. 26 U.S.C. §§ 1398, 1399. In turn, because the postpetition capital gains tax is not entitled to priority under § 507, it does not fall within the exception carved out by § 1222(a)(2)(A).

This construction of § 1222(a)(2), as amended by BAPCPA, is reinforced by the familiar maxim that courts are to "assume that Congress is aware of existing law when it passes legislation." Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990). When BAPCPA was enacted in 2005, this Court must assume that Congress was aware that a Chapter 12 estate is not a separate taxable entity.

The Knudsen court relied, in part, on legislative history to conclude that Congress intended to provide tax relief for taxes generated postpetition. 356 B.R. at 492. The history cited in Knudsen, however, is not the legislative history of BAPCPA, but of legislation introduced in 1999. Id. As other bankruptcy courts have pointed out,

9

the legislative history of BAPCPA is sparse and of little assistance in discerning legislative intent.[10]

Perhaps Congress meant to provide relief for postpetition taxes, but that is not what the statute provides. "It is well established that 'when the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms.'" Lamie v. United States Trustee, 540 U.S. at 534 (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1, 6 (2000)) (other citations omitted). In this case, the disposition of the text is not absurd: as written, § 1222(a)(2)(A) creates an exception for priority claims arising from the prepetition sale, transfer or exchange of farm assets. That is what § 1222(a)(2)(A) provides and no more. It is beyond the province of this Court to provide "what we might think ... is the preferred result." Id. at 542 (quoting United States v. Granderson, 511 U.S. 39, 68 (1994)).

Because the taxes arising from the postpetition sale of the farm do not qualify as an administrative expense under § 503(b) and are not entitled to priority under § 507, they do not fall within the purview of § 1222(a)(2)(A)'s exception and may not "be treated as an unsecured claim that is not entitled to priority." Accordingly, the IRS's objection is sustained.

---

[10] See, e.g., In re Sorrell, 359 B.R. 167, 176 (Bankr. S.D. Ohio 2007) ("To the extent legislative history of the 2005 Act can be used to resolve any arguable ambiguity in the statutory language, it is of dubious assistance."). See also In re Kenney, 2007 WL 1412921, at *7 (Bankr. E.D. Va. May 10, 2007); In re Quevedo, 345 B.R. 238, 246 (Bankr. S.D. Cal. 2006).

10

## VI. CONCLUSION

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052. An order consistent with this Memorandum Decision will be entered this date.

Dated this 2nd day of October, 2007.

*/s/ Eileen W. Hollowell*
EILEEN W. HOLLOWELL
UNITED STATES BANKRUPTCY JUDGE

Copies of the foregoing mailed this
2nd day of October, 2007, to:

Clifford B. Altfeld, Esq.
Altfeld Battaile & Goldman, P.C.
250 North Meyer Avenue
Tucson, AZ 85701
Attorneys for Debtors

Elizabeth A. Wilson, Esq.
Assistant U.S. Attorney
U.S. Attorney's Office
405 West Congress, Suite 4800
Tucson, AZ 85701
Attorneys for the Internal Revenue Service

Alan Costello, Esq.
1440 East Missouri Ave., Suite C-170
Phoenix, AZ 85014
Attorney for Trustee

David M. Reaves
P.O. Box 44320
Phoenix, AZ 85064
Chapter 12 Trustee

11

Denise Faulk, Esq.
Assistant Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926
Attorneys for the Arizona Department of Revenue

By _____
    Judicial Assistant

12